UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

United States of America

  v.          Case No. 1:21-cr-035-SM-2
              Opinion No. 2026 DNH 101
Danuary Espinal-Lara

**O R D E R**

Well over a year ago, on February 4, 2025, Danuary Espinal-Lara pled guilty to a charge of conspiracy to distribute and to possess with intent to distribute controlled substances.  He now moves, pursuant to Rule 11(d) of the Federal Rules of Criminal Procedure, to withdraw his guilty plea.  The government objects.

The court held evidentiary hearings on the defendant's motion, on May 20, 2026, and June 24, 2026.  After considering the evidence presented at the hearings, the parties' motions, and their supporting memoranda, the court necessarily denies defendant's motion.

**Background**

In March, 2021, Danuary Espinal-Lara was indicted, along with 13 others, on a single count of conspiracy to distribute and possess with intent to distribute controlled substances (400 grams or more of fentanyl).

**Espinal-Lara's February 4, 2025, Plea Hearing**

After a number of continuances, on January 28, 2025, a plea agreement between Espinal-Lara and the government was filed with the court.  Espinal-Lara pled guilty to the indictment on February 4, 2025, with an interpreter and his prior counsel, John Apruzzese, present.

Before accepting the defendant's plea, the court,[1] recognizing that Espinal-Lara does not speak English, took pains to inquire about his familiarity with the plea agreement, its implications, and Espinal-Lara's understanding of its terms. For example, the court asked the defendant, "am I correct to understand that if you tell me that you guys have discussed something or your client tells me that you guys have discussed something, you've done so with the assistance of an interpreter?"  Document No. 335 at 4:19-24.  Apruzzese confirmed the court's understanding, noting that he had reviewed the plea agreement with Espinal-Lara on several occasions with an interpreter's assistance.  Apruzzese directed the court's attention to an addendum at the bottom of the signed plea agreement.  Id. at 5:10-13  There, the interpreter had printed and signed a statement attesting that she had fully translated

---

[1]    Espinal-Lara's plea was taken by the Honorable Samantha Elliot, United States District Court Judge, District of New Hampshire.

2

the plea agreement in the defendant's presence on January 28, 2025.  See Document No. 328-1 at 14.

Apruzzese informed the court that an interpreter had been present during "all legal conversations" with Espinal-Lara "about trial strategy, decisions whether to plead guilty or go to trial, and the plea agreement."  Document No. 335 at 6:3-6. And, the defendant confirmed, under oath, that he had reviewed the plea agreement in its entirety with his attorney, with the interpreter's assistance.  Id. at 8:5-8.

After the government's factual proffer, the court asked the defendant whether he understood the prosecutor's recitation of the relevant facts, as set forth in the plea agreement.  The defendant responded that he had understood.  The court then asked the defendant if "what the prosecutor said was true."  Id. at 14:22-23.  The defendant responded:

> Defendant:      Some yes.  Some no.
>
> The Court:      Okay.  So we need to understand which
>                 ones are correct and which ones are not
>                 correct.  So give me one second.
>
>                 Do you want to have a couple of minutes
>                 to speak with your counsel and go
>                 through the plea agreement again so
>                 that you can tell me what part of those
>                 facts?  Because the prosecutor read the
>                 facts directly from the plea agreement
>                 so I need to understand what part of
>                 the facts as described in the plea

3

| | |
|---|---|
| | agreement you are contending are not true. |
| Defendant: | Yes, I want to say something to my lawyer. |
| The Court: | Okay.  We'll take a brief recess so that they can have a conversation. |

Document No. 335 at 14:24-15:12.

Following that recess, Apruzzese explained that defendant had questioned the drug weight that was attributed to him in the plea agreement.  Espinal-Lara sought to clarify that he was only responsible for the three to four kilograms of the six kilograms of fentanyl that had been recovered.  After clarifying that fact, Espinal-Lara confirmed his agreement with the facts presented by the prosecutor:

| | |
|---|---|
| The Court: | So, Mr. Espinal-Lara, your lawyer has just explained that when you had the chance to look at the details as they're written and not just hear the prosecutor say them, that you actually do agree with the facts that are described in the plea agreement.  Is that true? |
| Defendant: | Yes, your Honor. |
| The Court: | Okay.  So you agree that the laboratory testing confirmed the fentanyl to be confirmed to be more than six kilograms of fentanyl? |
| Defendant: | Yes, your Honor. |
| The Court: | But you also agree that [your co-defendant] told law enforcement that three to four of those kilograms belonged to you? |

4

| Defendant: | Yes. |
|---|---|
| The Court: | Okay.  Are there any facts that you have heard the prosecutor describe today that you don't agree are true? |
| Defendant: | No.  I'm in agreement with everything that the lawyer had read. |

Document No. 335 at 17:3-22.  Espinal-Lara assured the court that he was pleading guilty because he was guilty, and that the decision to plead guilty was his own: "I took my own decision on this."  Document No. 225 at 17:24-18:1, 27:17-18.

Espinal-Lara further stated that he was satisfied with Apruzzese's representation ("as of right now, yes," document no. 335 at 8:20-9:7); believed it was in his best interest to plead guilty ("I have seen things.  I think it's better this way," id. at 9:11-12); that he had fully discussed the indictment with counsel, along with any potential defense available to him (id. at 9:17-24); and that he understood his legal rights as explained to him by the court during the Rule 11 hearing (id. at 25:2-27:10).

After complying with Rule 11's remaining requirements, the court accepted Espinal-Lara's guilty plea.

5

**Withdrawal of Counsel and Motion to Withdraw Plea**

The case proceeded towards sentencing until April 8, 2025, when Apruzzese filed a motion to withdraw as counsel, citing a breakdown in communication with his client.  The motion was granted on April 21, 2025, and new counsel appointed.

On January 29, 2026, Espinal-Lara, acting pro se, filed a motion with the court (under seal) requesting a status of counsel meeting, and to withdraw his plea.  The court denied that motion without prejudice on February 3, 2026.

A few days later, on February 11, 2026, defendant, through counsel, filed a motion to withdraw his guilty plea.  In support of the motion, defendant argued: (1) he had not fully understood the "essential components" of the plea agreement or the plea colloquy because he does not speak or understand any English (document no. 343 at 4); and (2) he failed to "receive or understand key evidence" in his case at the time he pled guilty (id. at 1).

**May 20, 2026 Hearing**

The court held a hearing on defendant's motion to withdraw the plea on May 20, 2026.  Espinal-Lara testified through an interpreter.

6

Defendant began by testifying that Apruzzese had instructed him to "say yes to everything" at the plea hearing.  Espinal-Lara said he followed that advice, even though there "were a lot of questions that [he] didn't understand" during the hearing. Document No. 354 at 13:2-3.  Espinal-Lara testified that Apruzzese told him that, "if I didn't sign [the plea agreement], I would have a trial in five days and I was going to get [sentenced to serve] 15 to 20 years."  Id. at 9:24-25.  During the plea hearing, Espinal-Lara testified, he was confused because the interpreter "was speaking in [his] ear at the same time as the judge," and he had difficulty understanding the interpreter because she "was Columbian."  Id. at 20:17-25. "[T]hat's why [he] stopped the hearing," at one point, he explained.  Id. at 21:1-3.

With respect to the plea agreement itself, Espinal-Lara's testimony was riddled with inconsistencies.  He initially testified that he had never seen the plea agreement in its entirety (but conceded that he had signed it).  See, e.g., Document No. 354 at 17:18-24 (Government: "Did your attorney and the interpreter read to you every word that's in English into Spanish to you before you signed this plea agreement?" Defendant: "I insist I never saw that because they never brought me the whole thing.  Just one page for me to sign.").  And, he

refused to confirm whether Apruzzese and the interpreter had translated the plea agreement for him in its entirety before he signed.  See id. at 15:24-16:4 (Government: "Did your attorney and the interpreter translate for you each page of the plea agreement before you signed that?"  Defendant: "No.  I'm saying they didn't.  I just signed what [Apruzzese] said to sign.").

| | |
|---|---|
| Government: | So is it your testimony that this 14-page document was not translated for you before you signed it?  One word, yes or no, please. |
| Defendant: | No. |
| Government: | Okay.  So it is your testimony that the interpreter who signed this and said that she did interpret this for you, this 14-page document, is not telling the truth?  Is that your testimony? |
| Defendant: | I'm not saying the interpreter didn't tell the truth.  I'm saying what my testimony is.  That I signed one page and he only brought me that page to sign. |

Document No. 354 at 17:25-18:10.  See also id. at 16:10-15 (Government: "Are you aware that the interpreter also signed the plea agreement and attested that she translated the plea agreement to you in the presence of your attorney on January 28, 2025?"  Defendant: "If he has a video or evidence of that, he should show it to you.  Because I'm telling you I just signed it.")

8

Later during the hearing, however, when questioned by the court, Espinal-Lara admitted that the interpreter had read the agreement in full to him in Spanish before he signed:

> The Court:    Mr. Apruzzese did not, according to you, give you -- or did not review each term of the written plea agreement, each paragraph, each page, before you signed the signature page?
>
> Defendant:    No.  That's what I'm saying.  He didn't show me anything.
>
> The Court:    Yeah, you're not saying it.  That's why I keep asking the same question.  Are you saying that he did not review each page, each paragraph of the plea agreement with you before you signed the signature page?  Yes or no?  Yes or no? He either did or didn't.
>
> Defendant:    No.  That's what I'm saying.  He didn't read anything to me.
>
> The Court:    We're going to keep doing this until I get a straight answer.  Are you saying Mr. Apruzzese did not read to you each page and each paragraph of the written plea agreement before you signed the signature page?  Because that's what you're saying.
>
> Defendant:    That's what I'm saying.  That he would always say that I should sign that agreement because that was what was read to me.
>
> The Court:    One more time.  Did he not read to you each paragraph and discuss each paragraph, each page of the plea agreement, with the translator before you signed the last page?
>
> Defendant:    He only read that if I didn't sign that, I would have a trial in four days.

9

| | |
|---|---|
| The Court: | He read it? |
| Defendant: | That's what he said. |
| The Court: | You said he read it. |
| Defendant: | That's what the interpreter read. |
| The Court: | The interpreter read the entire agreement for you before you signed it? |
| Defendant: | Yes.  The interpreter read some pages that said that I was waiving the right for the government to prove reasonable cause.  If I signed the agreement, I didn't have to go to trial. |
| The Court: | Did the translator read the entire agreement to you in Spanish? |
| Defendant: | Yes, in Spanish. |
| The Court: | Okay.  All right. |

Document No. 354 at 28:22-40:14.

Espinal-Lara testified that he decided to withdraw his guilty plea after he saw the discovery documents in Spanish while being interviewed by Probation as part of the presentencing process.  At that time, he says, he "realized that nothing [in the documents] was right."  Id. at 34:23.  Apruzzese had provided him with copies of the relevant discovery documents, but those documents were in English, so he could not understand them.  Once he viewed the documents translated to Spanish, he noticed "the mistakes there because the federal agents say one thing and then they say another."  Document No. 354 at 11:9-12.

10

When questioned as to whether he had been truthful in answering the questions posed by the court at the plea hearing, Espinal-Lara responded, "well, I told the truth based on what [my attorney] had told me, but what he had told me was lies based on something that I hadn't done."  Id. at 22:5-7. Espinal-Lara said that, because Apruzzese had not provided him with the relevant discovery (in Spanish) prior to the plea hearing, he could not answer the court's questions at the hearing honestly:

> if I tell you there's a thief in your house and the judge asks you if there was a thief but then you realize there wasn't, then you're telling the truth on one side and a lie on the other.  Well, like I said, I don't understand the language so I just said my answers based on what I knew, which were lies.  And after I saw the evidence, I realized that I'm not guilty of what they were saying I was.

Document No. 354 at 23:1-8.


Espinal-Lara further explained his decision to plead guilty:

The Court:    You were coming to court [on February 4, 2025] you understood to plead guilty, right?

Defendant:    Yes, sir.

The Court:    Okay.  A few minutes ago you said, do you think I would plead guilty to something I didn't do, rhetorically, as if the answer was I wouldn't do that. Yet that's precisely what you did.  Why did you do that?

11

Defendant:       Well, I guess that I was confused at that time because [Apruzzese] had told me that if I went to trial, the federals would bring a lot of witnesses.  That they could fill up the room with witnesses.  That even if they don't know me, that that's what the judge would hear, the witnesses against me, and I think he just fooled me like a child.  Well, I feel like he rushed me, he really tricked me, and he had me just sign because he said he wouldn't be able to represent me at a trial.

Document No. 354 at 33:8-25.

Now, Espinal-Lara testified, he wanted to withdraw his plea because he had "minimal participation" in the conspiracy, "was a victim" himself, and had been out of the country at the time of the offense, all facts which, he told the court, he had fully explained to Apruzzese.  Id. at 42:2-43:6.

**June 24, 2026 Hearing**

Espinal-Lara's prior counsel, Attorney John Apruzzese, has been a practicing attorney for 33 years, the majority of those years spent in criminal defense.  He testified at the June 24, 2026, hearing.

12

A. <u>Attorney-Client Discussions Prior to Plea</u>

Apruzzese described his multiple meetings with Espinal-Lara, noting that he was accompanied by an interpreter at each meeting.

The first meeting occurred on August 22, 2024, at the Strafford County House of Correction.  At the meeting, Apruzzese (through the interpreter) reviewed the indictment with Espinal-Lara, and the relevant statute.  Apruzzese and Espinal-Lara also reviewed the discovery the government provided.  Apruzzese explained, "I had nine or 10 [discovery] documents that I had numbered.  And, [the] . . . discovery is quite extensive.  I didn't read [the documents to Espinal-Lara] verbatim, but I summarized nine or 10 documents to go over as to what the facts were."  June 24 Hearing Tr. at 7:22-25.  Apruzzese offered to leave copies of the discovery documents with Espinal-Lara. Espinal-Lara declined the offer because the documents contained sensitive information, and were written in English.

On September 24, 2024, Apruzzese and the interpreter met with Espinal-Lara again at the Strafford County House of Correction, and further discussed "the facts of the case."  They reviewed the applicable sentencing guidelines, and discussed plans for a meeting in November.

13

On November 18, 2024, Apruzzese and the interpreter met with the defendant at the federal courthouse.  At that time, Apruzzese and Espinal-Lara discussed whether Espinal-Lara should consider pleading guilty to the offense.  Following their November meeting, Apruzzese had multiple discussions with the government in the course of plea negotiations.

In December, 2024, Espinal-Lara changed his mind regarding copies of the discovery documents.  He called Apruzzese, and asked him to send copies of the discovery to the jail immediately.  Apruzzese promptly mailed Espinal-Lara the discovery from the government (still in English).

On January 17, 2025, Apruzzese and the interpreter met with Espinal-Lara at the Strafford County House of Corrections for approximately two hours to update him on the status of plea negotiations.  Consistent with Apruzzese's general practice,[2] he had drafted a letter to Espinal-Lara assessing the government's case against the defendant, and explaining the government's plea offer in detail, as well as potential implications of a guilty plea.  During that meeting, Apruzzese asked the interpreter to

---

[2]    Apruzzese testified that, in the majority of criminal cases he handles that involve a plea offer from the government, he prepares an "explanation of plea offer letter" for his client to ensure that he has "explained to the client as best [he] can all the information that [he has]."  June 24 Hearing Tr. at 4:18-25.

14

translate and read the letter aloud, because the letter was written in English, which the interpreter did.  Apruzzese and Espinal-Lara then discussed the contents of the letter (through the interpreter).  Espinal-Lara, the interpreter, and Apruzzese all signed the letter that day, attesting that they had reviewed the contents of the letter.

Apruzzese and Espinal-Lara met again at the Strafford County House of Corrections on January 22, 2025, with the interpreter present.  Apruzzese updated Espinal-Lara regarding negotiations with the government, and other strategic issues relating to sentencing.  They also discussed the potential impact the new presidential administration might have on prosecution of Espinal-Lara's case.

During the meeting, Apruzzese read portions of the plea agreement aloud to Espinal-Lara (translated by the interpreter), including the section regarding the offense conduct.  At the time, Espinal-Lara asked Apruzzese for his recommendation as to whether he should plead guilty.  Apruzzese responded that the decision was ultimately Espinal-Lara's.

On January 28, 2025, Apruzzese, Espinal-Lara, and the interpreter met again.  At that time, Espinal-Lara reviewed and signed the plea agreement.  Prior to Espinal-Lara signing,

Apruzzese asked the interpreter to translate and read aloud the entire plea agreement in Spanish.  Apruzzese recalled that the defendant had inquired into sentencing consequences during that meeting, so they reviewed that portion of Apruzzese's January 17 letter relating to the relevant guideline calculations.

Apruzzese testified that he did not tell Espinal-Lara that "he needed to just say yes to everything that the judge asked" at the plea hearing; or that "if [Espinal-Lara] didn't say yes to everything, he was going to have a trial in four days;" or that the "government would fill the courtroom with witnesses and the jury would believe the witnesses and not the defendant." June 24 Hearing Tr. at 24:4-13; 27:6-13; 27:21-24.

B. Post-Plea Breakdown of Attorney-Client Relationship

Apruzzese testified that he received a phone call from Espinal-Lara on March 24, 2025, requesting that the discovery documents from the government be translated into Spanish.  The phone call was brief, but Apruzzese visited the defendant a few days later on April 7, 2025, with an interpreter.

During the April 7 meeting, Apruzzese testified, the "attorney client relationship became quite contentious and we could not communicate successfully." Id. at 26:9-12.  Espinal-Lara accused Apruzzese of lying about the discovery evidence,

and told Apruzzese he wanted to go to trial (which Apruzzese took to mean that Espinal-Lara now wanted to withdraw his guilty plea).  The April 7, 2025, meeting was the first time that Espinal-Lara mentioned to Apruzzese that he wanted to go to trial after pleading guilty two months earlier.

Espinal-Lara told Apruzzese that he had recently discovered information that contradicted the government's discovery. Specifically, Espinal-Lara told Apruzzese that his wife had spoken with one of the government's witnesses, "and the witness said that the stuff that was provided in the discovery is a lie and the witness was not going to testify."  Id. at 36:14-16.

More generally, Apruzzese testified that in the course of his representation of the defendant, Espinal-Lara had never displayed a "lack of understanding or comprehension about the nature of the charges brought against him by the government." Id. at 38:11-14.  And, Apruzzese testified, at no point in time prior to pleading guilty did Espinal-Lara indicate that he did not understand the evidence against him, suggest as a defense that he had been "misidentified," and/or contend that "some other perpetrator" had committed the crime.  Id. at 39:5-9. And, Apruzzese testified, the defendant had never raised with him "the idea of actual innocence" as a defense that Apruzzese had "failed to pursue."  Id. at 39:10-12.  Finally, Apruzzese

17

testified that Espinal-Lara had never given any indication that he was at all confused about the plea agreement during the multiple times they had reviewed the agreement together.  Id. at 40:13-16.

### Standard of Review

It is well-settled "that a defendant has no absolute right to withdraw a guilty plea."  U.S. v. Caramadre, 807 F.3d 359, 366 (1st Cir. 2015) (citing U.S. v. Ramos-Mejía, 721 F.3d 12, 14 (1st Cir. 2013); U.S. v. Gates, 709 F.3d 58, 68 (1st Cir. 2013)).  "When a defendant moves to withdraw a guilty plea after the court has accepted it but before the court has sentenced him, he may do so only if he 'can show a fair and just reason for requesting the withdrawal.'"  Id. (quoting Fed. R. Crim. P. 11(d)(2)(B)) (citing Gates, 709 F.3d at 68; U.S. v. Marrero-Rivera, 124 F.3d 342, 347 (1st Cir. 1997)).  The burden to make that showing is on the defendant.  Caramadre, 807 F.3d at 366 (citing Marrero-Rivera, 124 F.3d at 347).

When considering a plea withdrawal, the court must ask "whether the original guilty plea was knowing, intelligent, and voluntary."  Caramadre, 807 F.3d at 366 (citing U.S. v. Aker, 181 F.3d 167, 170 (1st Cir. 1999) (further citations omitted).  "Other factors, however, may weigh in the balance," including "the plausibility and weight of the reason given for the

18

withdrawal, the timing of the request, whether the defendant is now colorably asserting legal innocence, and whether the original plea was pursuant to a plea agreement." Caramadre, 807 F.3d at 366 (citations omitted).

## Discussion

In support of his motion to withdraw his plea, Espinal-Lara argues that: (1) his plea was not knowing, voluntary, and intelligent: (2) "he did not receive or understand key evidence." Document No. 353 at 1.

### 1. Knowing, Intelligent, and Voluntary

The court considers first the "most significant factor," which is whether Espinal-Lara's plea was knowing, intelligent, and voluntary. U.S. v. Garcia-Nunez, 71 F.4th 1, 10 (1st Cir. 2023). Given the defendant's sworn statements at the Rule 11 hearing, the court has "little difficulty concluding" that Espinal-Lara's plea "passes muster." U.S. v. Dunfee, 821 F.3d 120, 127 (1st Cir. 2016).

> As our court of appeals explained in U.S. v. Dunfee:
>
> > [the defendant] affirmatively declared under oath at a properly conducted Rule 11 hearing that he was guilty of the crimes with which he was charged. These "declarations in open court carry a strong presumption of verity," U.S. v. Santiago Miranda, 654 F.3d 130, 138 (1st Cir. 2011) (quoting Blackledge v. Allison, 431 U.S. 63, 74

19

(1977)), and the district court was "entitled to give weight to [those declarations] absent a 'good reason for disregarding them,'" <u>id.</u> (quoting <u>U.S. v. Torres-Rosario</u>, 447 F.3d 61, 67 (1st Cir. 2006)).

821 F.3d at 128.

<u>Knowing and Intelligent</u>.  Espinal-Lara argues that, because he does not speak English, he struggled to understand what was being asked of him during the change of plea hearing.  But, that argument is not supported by the evidence.

As a preliminary matter, the defendant fails to identify any specific point of confusion within either the plea agreement or the plea colloquy.  He instead generally and vaguely claims that the plea's "essential components were not fully understood."  Document No. 343, at 4.  But, the plea agreement and its terms were reviewed with Espinal-Lara in Spanish on multiple occasions times before the Rule 11 hearing.  So, he was familiar with its terms prior to the hearing.  And, the Rule 11 hearing was translated for Espinal-Lara contemporaneously.

If, as he now contends, Espinal-Lara had trouble understanding the Spanish translator during the Rule 11 hearing, or was having trouble following as a result of the synchronous translation, he was free to raise that issue with the court, or with counsel at any time during the hearing.  His failure to do

20

so casts doubt on his current claim.  And, Espinal-Lara's response to the prosecutor's recitation of the facts underlying the plea agreement during the Rule 11 hearing (and his later testimony regarding that response) suggests he understood he could raise any issues he may have been having, and that the court would do its best to address those issues to his satisfaction.  See Document No. 354 at 25:19-25 (Government: "after I finished reading the factual basis, the judge asked you whether what the prosecutor said was true, was it correct.  Do you remember that question?"  Defendant: "Well, you are focusing on that, but that's when I asked to stop the hearing because I wasn't agreeing with what you said.").  See U.S. v. Flete-Garcia, 925 F.3d 17, 24 (1st Cir. 2019) ("The transcript of the Rule 11 hearing makes pellucid that even though [defendant's] responses to some of the district court's questions warranted further inquiry, the court conducted just such an inquiry.  It patiently explained and re-explained the nature of the offenses to which [defendant] was pleading and recounted the implications that would follow.").  Moreover, the court took a recess to allow Espinal-Lara time to consult with his counsel after he expressed some disagreement with the prosecutor's recitation of the facts.  To the extent that Espinal-Lara was having difficulty with the interpreter's translation, that recess also

21

presented a full opportunity for Espinal-Lara to raise any difficulty with his counsel.

Defendant further argues that his plea was not knowing or intelligent because he was coached by counsel to respond "yes" to all of the court's questions during the Rule 11 hearing. But, as our court of appeals noted in U.S. v. Varela-Rivera, 551 Fed. Appx. 583, 588 (1st Cir. 2014), a defendant's claim that "his counsel coached him as to the responses is not by itself enough to show that the plea was uninformed." See also U.S. v. Padilla-Galarza, 351 F.3d 594, 598 (1st Cir. 2003) "[defendant's] current claim that he did not carefully review the written document and that his counsel coached him as to the responses is not by itself enough to show that the plea was uninformed. [Defendant] assured the court at the time of the plea that he had reviewed the agreement and the government's appended version of the facts and discussed it with counsel."). And, notwithstanding his current argument, Espinal-Lara did not respond "yes" to all of the court's questions during the hearing. Instead, he sought clarification when he did not understand, and requested time to consult with counsel. See Document No. 335 at 14:19-15:10; see also 26:20-23 (Defendant: "I didn't agree on how much drugs they wanted to attribute to me because he had said that I was going to have a minimal role, but

22

when [the prosecutor] read the evidence, supposed evidence, I didn't agree with it."). Cf., U.S. v. Isom, 85 F.3d 831, 836 (1st Cir. 1996) (defendant failed to demonstrate that plea was not knowing, voluntary, and intelligent where he "did not simply agree to everything the court asked him, as he now contends his attorney told him to do: in the colloquy quoted above, he denied that he had come to a ballpark figure of what the sentencing guidelines would require, confirming that with his counsel.")

Finally, Espinal-Lara's contention that his plea was neither knowing nor intelligent is undermined by his delay in seeking to withdraw his guilty plea. "While an immediate change of heart may well lend considerable force to a plea withdrawal request, a long interval between the plea and the request often weakens any claim that the plea was entered in confusion or under false pretenses." U.S. v. Doyle, 981 F.2d 591, 595 (1st Cir. 1992).

Voluntary. Espinal-Lara's argument concerning the voluntary nature of his plea is less straightforward. Seemingly, he argues that his plea was involuntary because he did not raise defenses such as duress and coercion with counsel prior to the hearing "due to psychological pressure, fear and intimidation."

23

"A defendant seeking to unravel a guilty plea ... must show that he pleaded guilty 'under so much duress that [his plea] could no longer be considered a product of free will.'" U.S. v. Adams, 971 F.3d 22, 39 (1st Cir. 2020) (alteration in original) (quoting Caramadre, 807 F.3d at 369).  Espinal-Lara falls well short of that standard.

First, the defendant stated under oath at the plea colloquy that no one had pressured or threatened him to plead guilty. Second, the record lacks any evidence, or even suggestion, of "psychological pressure, fear, and intimidation" to which Espinal-Lara was purportedly subjected.  And, Espinal-Lara fails to provide any explanation as to why fear and intimidation prevented him from fully disclosing potential defenses to his counsel.  Finally, he stated under oath that the decision to plea was his own.  ("I took my own decision on this.").  In short, Espinal-Lara's current argument that his plea was involuntary is simply not credible.

For these reasons, Espinal-Lara has not met his burden of establishing that his plea was not knowing, voluntary, or intelligent.

24

## 2. "Fair and Just" Reason for Withdrawal

The court may allow a plea to be withdrawn if the defendant can show a fair and just reason for requesting the withdrawal. Thus, "court must assess the force and plausibility of the reasons proffered for withdrawal." U.S. v. Fonseca, 49 F.4th 1, 7 (1st Cir. 2022).

Espinal-Lara has provided several shifting explanations for why he pled guilty, and why he should be allowed to withdraw that plea. In addition to arguing that his guilty plea was not voluntary, knowing, or intelligent, he contends that he did not receive or understand key evidence when he pled guilty.

As a preliminary matter, the Supreme Court "has found that the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." U.S. v. Ruiz, 536 U.S. 622, 630 (2002) (citations omitted). Notwithstanding, Espinal-Lara's contentions are, first, undermined by his failure to identify with any sort of specificity the information in the government's discovery that is wrong or incorrect, and upon

25

which he detrimentally relied; and second, are unsupported by the record evidence.

At the May 20 hearing, Espinal-Lara testified in vague terms that the discovery from the government contained mistakes "because one person says one thing and another one says different," and that he did not realize those mistakes until he was able to view the documents in Spanish, after his guilty plea.  Document No. 354 at 10:10 – 11:12.  He now claims that "[e]verything in the documents are lies."  Document No. 354 at 36:13-14.

Assuming, as Espinal-Lara now claims, that "everything" in the government's discovery "is lies," Espinal-Lara must have been aware of at least some of those "lies" prior to pleading guilty because he reviewed (at least some) of the discovery with counsel and the interpreter.  Apruzzese testified that he reviewed several of the discovery documents with Espinal-Lara (and an interpreter) at their meeting on August 22, 2025.  June 24 Hearing Tr. at 7:21-8:5.  And, Espinal-Lara himself testified that he "thought" he had reviewed the discovery documents with Apruzzese before pleading guilty:

> The Court:     Did he review the government's evidence against you with you before you signed the plea agreement?

26

Defendant:          He brought me some documents in English that
                    now when my new attorney brought them to me
                    in the discovery, they're redacted.

The Court:          But he reviewed the government's evidence
                    with you before you pled guilty?

Defendant:          I think so.

June 24 Hearing Tr. at 37:23-38:5.

Apruzzese's testimony suggests that Espinal-Lara actually seeks to withdraw his guilty plea because he has since learned (or been told) that one of the government's witnesses against him is no longer willing to testify.  But, that circumstance, even if true, is not a "fair and just" reason to withdraw his guilty plea.  See U.S. v. Sanchez-Lopez, 372 Fed. App. 713, 714 (9th Cir. 2010) ("The district court did not abuse its discretion when it concluded that [defendant's] belief that a witness would not cooperate with the government was not a fair and just reason for withdrawing his guilty plea.").  A "guilty plea will not be set aside where a defendant has had a change of heart simply because he now believes the case against him has become weaker . . . ."  Miranda-Gonzalez v. United States, 181 F.3d 164, 165 (1st Cir. 1999).

**3. Serious Claim of Actual Innocence**

The court also considers whether Espina-Lara has asserted a meaningful claim of innocence, keeping in mind that "[m]erely

27

voicing a claim of innocence has no weight in the plea-withdrawal calculus; to be given weight, the claim must be credible." U.S. v. Fernandez-Santos, 856 F.3d 10, 19 (1st Cir. 2017) (quoting Gates, 709 F.3d at 69). "A defendant must put forward factual contentions that create a legally cognizable defense to the charges, otherwise he has not effectively denied his culpability, and the district court may deny the motion to withdraw." Id. (internal quotations and modifications omitted) (cleaned up). Our court of appeals has "made clear that 'weak and implausible assertions of innocence' do not weigh in favor of withdrawal." U.S. v. Fonseca, 49 F.4th at 8 (quoting U.S. v. Sanchez-Barreto, 93 F.3d 17, 24 (1st Cir. 1996)) (citations omitted).

Espinal-Lara has not meaningfully asserted that he is innocent of the charged offense. To the contrary, he admitted under oath to having committed the acts forming the basis of his plea, and that he was pleading guilty because he was guilty. See Gates, 709 F.3d at 69-70 ("A defendant is normally bound by the representations that he himself makes in open court at the time of his plea. As we have said, such statements are more likely to be reliable than later versions prompted by second thoughts.") (internal citations and quotations omitted). Indeed, during the Rule 11 hearing, Espinal-Lara even sought to

28

clarify the amount of fentanyl for which he was responsible. And, Espinal-Lara fails to provide a plausible explanation as to why he adopted the statement of facts in his plea agreement admitting to the offense conduct.

Espinal-Lara did vaguely testify that he cannot be guilty because he was out of the country at certain times.  However, he offers no independent corroboration (or even any specific detail) in support of that testimony.  And, the "court is not obliged 'to give weight to a self-serving, unsupported claim of innocence.'"  U.S. v. Adams, 971 F.3d at 40 (quoting U.S. v. Ramos, 810 F.2d 308, 313 (1st Cir. 1987)).  See also U.S. v. Nieves-Melendez, 58 F.4th 569, 577 (1st Cir. 2023) ("merely voicing a claim of innocence has no weight in the plea-withdrawal calculus; to be given weight, the claim must be credible.") (quotations omitted) (cleaned up).  "This is especially true when — as in this case — such a belated claim of innocence 'flies in the face of several admissions to the contrary.'"  Id. (quoting Santiago Miranda, 654 F.3d at 139) (further quotations omitted).

For these reasons, Espinal-Lara's claim of innocence, such as it is, does not constitute a "fair and just reason" for the withdrawal of his plea.

29

**4. Timing**

Defendant pled guilty on February 4, 2025, after extended delays.  And, even giving him every inferential benefit, Espinal-Lara did not indicate that he wanted to withdraw his plea until, at the earliest, at least two months later.  The Court of Appeals for the First Circuit addressed a similar two-month delay in U.S. v. Isom, writing:

> We have repeatedly noted that the more a request is delayed - even if made before sentence is imposed - the more we will regard it with disfavor.  See, e.g., U.S. v. González-Vázquez, 34 F.3d 19, 23 (1st Cir. 1994); U.S. v. Parrilla-Tirado, 22 F.3d at 373.  "The rule of thumb is that the longer a defendant waits before moving to withdraw his plea, the more potency his motion must have in order to gain favorable consideration."  Id.  Thus, we have viewed unfavorably motions to withdraw a plea made six months following the guilty plea, id., seven months later, U.S. v. Doyle, 981 F.2d at 595, three weeks later, U.S. v. Keefe, 621 F.2d 17, 18 (1st Cir. 1980), or thirteen days later, Ramos, 810 F.2d at 313.  Clearly, Isom's two-month delay in making his request falls well within this range.  See U.S. v. Crosby, 714 F.2d 185, 192 (1st Cir. 1983) (upholding district court's refusal to grant motion to withdraw where, inter alia, motion was made eight weeks following sentencing).  "Given the totality of the circumstances that pertain here, [A]ppellant's lassitude serves to cast considerable doubt upon the legitimacy of his professed reason for seeking to change course."  González-Vázquez, 34 F.3d at 23.

Isom, 85 F.3d at 838-39.  So too, here.

30

**5. Prejudice to the Government**

Because Espinal-Lara has not established a fair and just reason for withdrawal of his guilty plea, the court need not inquire into whether the government would be prejudiced if withdrawal were allowed.  See, e.g., U.S. v. Fernandez-Santos, 856 F.3d at 20 ("Because none of these factors weigh in favor of granting [defendant's] motion to withdraw his guilty plea, we do not have to address any prejudice the government might face if the motion were granted.") (citations omitted).

In sum, none of the plea withdrawal factors weigh in favor of allowing Espinal-Lara to withdraw his guilty plea, and his motion is therefore denied.  As aptly stated by our court of appeals: "[t]his court has not allowed defendants, absent coercion or mistake, to renege on plea agreements on the basis that they have miscalculated their risks and benefits or have belatedly discovered a new defense.'" U.S. v. Adams, 971 F.3d at 40 (quoting U.S. v. Muriel, 111 F.3d 975, 981 (1st Cir. 1997)).  Put simply, "[b]uyer's remorse is not enough." Id.

## CONCLUSION

For the foregoing reasons, as well as those argued in the government's objection to defendant's motion to withdraw his

31

guilty plea (document no. 348), Espinal-Lara's motion to withdraw his guilty plea (document no. 343) is **DENIED**.

       **SO ORDERED.**

                                 _____

                                 Steven J. McAuliffe
                                 United States District Judge

August 3, 2026

cc:  Counsel of Record
     U.S. Marshal
     U.S. Probation